

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **SPARTA INSURANCE COMPANY** ) <br> a Foreign Corporation, ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> **vs.** ) <br> ) <br> **DANNY JOE POORE d/b/a** ) <br> **ECONOMY PEST CONTROL,** ) <br> an individual; **CARLOS SLAGHT,** ) <br> and individual; **JOAN SLAGHT,** an ) <br> individual; and **ANDREW HUNTER,** ) <br> an individual, ) <br> ) <br>     **Defendants.** ) <br> ) | **CIVIL ACTION NO.:** <br> **CV-** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now SPARTA Insurance Company ("SPARTA"), and brings this action for declaratory judgment pursuant to 28 U.S.C. § 2201 against Danny Joe Poore d/b/a Economy Pest Control, Carlos Slaght, Joan Slaght, and Andrew Hunter. As grounds for this action, SPARTA states as follows:

## JURISDICTION AND VENUE

1. SPARTA brings this declaratory judgment action in accordance with 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 for a declaration of the rights and obligations of SPARTA in connection with the claims made by Carlos Slaght, Joan Slaght, and

Andrew Hunter under commercial general liability policies issued by SPARTA to Economy Pest Control, including: policy number 011 GL 00035, in effect from November 15, 2008 until November 15, 2009; policy number 011 GL 00716, in effect from November 15, 2009 until November 15, 2010; policy number 011 GL 01477, in effect from November 15, 2010 until November 15, 2011; and policy number 011 GL 03890, in effect from November 15, 2011 until November 15, 2012. SPARTA asserts that it does not have a duty to defend EPC in the underlying lawsuits.

    2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the citizenship of the plaintiff seeking declaratory judgment is diverse from all defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs. Carlos and Joan Slaght have demanded amounts in excess of $75,000. (*See* Slaght Demand Letter, attached as "Exhibit A"), while Andrew Hunter asserts a "substantial claim." (*See* Hunter Demand Letter, attached as "Exhibit B"). Because this matter involves defense and indemnity obligations SPARTA owed to EPC for those claims, the amount in controversy exceeds the jurisdictional minimum.

    3.    Venue is proper in the United States District Court for the Northern District of Alabama under 28 U.S.C. §1391(a)(2) because the insured business is located in this venue, and because the insurance contracts made subject to this suit were issued in this venue. Additionally, virtually all relevant actions in connection

with this Complaint for Declaratory Judgment took place within this district.

## THE PARTIES

4.      This declaratory judgment action arises out of claims made by Plaintiffs in underlying lawsuits, Carlos Slaght, Joan Slaght, and Andrew Hunter. The underlying Plaintiffs allege that Danny Joe Poore d/b/a Economy Pest Control failed to properly treat and/or inspect their respective houses for termites and other pests. Economy Pest Control is the named insured on an insurance policy issued by SPARTA, which is defending the underlying lawsuits under a strict reservation of rights.

5.      Danny Joe Poore is an individual over the age of nineteen doing business as Economy Pest Control ("EPC") with its principal place of business in Weaver, Calhoun County, Alabama. Poore is a resident of Calhoun County, Alabama.

6.      Carlos Slaght is an individual over the age of nineteen who is a resident of Jacksonville, Calhoun County, Alabama.

7.      Joan Slaght is an individual over the age of nineteen who is a resident of Jacksonville, Calhoun County, Alabama.

8.      Andrew Hunter is an individual over the age of nineteen who is a resident of Weaver, Calhoun County, Alabama.

9.      SPARTA is a corporation organized and existing under the laws of

Connecticut with its principal place of business in Hartford, Connecticut.

## FACTUAL ALLEGATIONS

### Underlying Actions

10. The underlying actions made the basis of this Complaint for Declaratory Judgment were filed in the Circuit Court of Calhoun County and are styled <u>Carlos Slaght and Joan Slaght v. Danny Joe Poore d/b/a Economy Termite and Pest Control</u>, Civil Action Number CV-2012-900319.00 (*See* Slaght Complaint, "Exhibit C"), and <u>Andrew Hunter v. Danny Joe Poore d/b/a Economy Termite and Pest Control</u>, Civil Action Number CV-2013-900368.00 (*See* Hunter Complaint, "Exhibit D").

11. Carlos Slaght and Joan Slaght allege that the termite treatment and protection services EPC provided at the Slaght house beginning in 1991 were faulty, and that EPC either did not disclose or remedy a termite infestation each subsequent year it serviced the Slaghts' house until 2012. Due to the alleged poor treatment/service, the Slaghts' house became infested with termites, causing them to sustain property damage and mental anguish. (Slaght Compl. ¶¶ 16-75). More specifically, the Slaghts allege:

   a. They received a written termite repair contract, bond, and guarantee from EPC in 1991 or 1992 and paid for annual inspections for the next twenty years, during which time no infestation was reported. In fact, EPC reported that the house

was "good." The Slaghts assumed the work was performed in accordance with statutory minimum standards.(Slaght Compl. ¶¶ 21-24).

    b.    They saw their first termite swarm in their house in 2009 or 2010, and called EPC, which treated the house, told them this was normal, and assured them that the house was "fine," but failed to disclose any wood damage. (Slaght Compl. ¶¶ 25-29).

    c.    They discovered a second swarm of termites in their house as well as significant, unreported wood damage in March of 2012. EPC sprayed the house, but refused to repair the damage. (Slaght Compl. ¶¶ 33-35).

    d.    They reported EPC to the Alabama Department of Agriculture and Industries (ADAI) on April 18, 2012, which investigated and made the following findings (which the Slaghts adopt):

        I.    The house has termite damage;

        ii.    The house has never been properly treated;

        iii.    The house has been poorly inspected annually; and

        iv.    EPC violated a number of statutory minimum standards for termite control. (Slaght Compl. ¶¶ 35-41).

    e.    EPC performed structural pest control work without a license in violation of criminal law. (Slaght Compl. ¶ 42).

      f.      EPC never warned or corrected conditions conducive to infestation although an adequate inspection would have revealed these conditions, and EPC concealed their inadequate treatment and/or inspections from the Slaghts. (Slaght Compl. ¶¶ 45-50; 70-72).

      12.      Andrew Hunter alleges that the termite treatment and protection services EPC provided at his house in 2010 were faulty, and that EPC either did not disclose or remedy a termite infestation each subsequent year it serviced Hunter's house until 2012. Due to the poor treatment/service, Hunter claims his house became infested with termites, causing him to sustain significant property damage and mental anguish. (Hunter Compl. ¶¶ 16-63). In particular, Hunter alleges:

      a.      He purchased his newly built house in April of 2010, which was treated by EPC during construction. Hunter assumed the pest and termite contract upon purchase and paid for the annual inspection/contract renewal thereafter. (Hunter Compl.¶¶ 16-17).

      b.      EPC inspected the house annually, never mentioning a potential termite issue. When Hunter found termites in his garage in March of 2012, EPC performed a spot treatment which was not in accordance with statutory requirements. (Hunter Compl.¶¶ 20-23).

      c.      In February of 2013, he found termites in his bedroom wall, which

borders the garage. EPC did not answer Hunter's calls regarding this infestation. (Hunter Compl.¶¶ 24-25).

    d.    He ultimately reported EPC to the ADAI on February 28, 2013, which investigated and found that there was a termite infestation, and that EPC had violated a number of statutory requirements in the treatment of the house. (Hunter Compl.¶¶ 31-31).

    e.    EPC performed structural pest control work without a license in violation of criminal law. (Hunter Compl. ¶ 33).

    f.    EPC never properly treated the house in the first place or conducted proper inspections annually. (Hunter Compl.¶¶ 34-35).

    g.    EPC never warned or corrected conditions conducive to infestation, although an adequate inspection would have revealed these conditions. EPC concealed its inadequate treatment and/or inspections from Hunter. (Hunter Compl.¶¶ 36-37, 43, 57-58).

    13.    Both the Slaghts and Hunter assert the same causes of action, including: fraud, including promissory fraud and deceit; breach of warranty; negligence, including negligence per se; wantonness; breach of contract; equitable relief, including unjust enrichment; and negligent training, supervision and retention. In their lawsuit, the Slaghts seek compensatory damages (including damages for mental

anguish), incidental, consequential and punitive damages; equitable relief; all fees and costs of for the litigation, including but not limited to fees and costs of experts, discovery, depositions, as well as reasonable attorneys' fees and expenses. (Slaght Compl. ¶¶ 76-111); (Hunter Compl. ¶¶ 64-99).

## The Insurance Policies at Issue

14. On November 5, 2008, the date Danny Poore completed his first application for insurance with SPARTA, Mr. Poore represented that he had held an "active PC license" for termites and general household pests for 22 years, license number 51881. He stated that he no longer assumes termite contracts for structures he did not initially treat. Finally, he affirmed that he had no citations for governmental violations in the 36 months prior to his application. (Application Materials, "Exhibit E").

15. Danny Poore and Kathleen Poore (who was listed as an owner on the original application) also submitted signed, handwritten letters as part of the application process. The first stated:

> Effective 11-5-08, Danny J. Poore and Kathleen Poore DBA Economy Pest Control, 604 Ledford St., Weaver, AL 36227, (256) 820-7172, no longer will engage in structural pest control 'termite treatments.' We do not perform wood infestation inspection reports. We only engage in general household pest control.

The second stated, "We do not perform WRI's for real estate company's [sic]. The

only WRI's that we do perform is [sic] on homes that have a current termite contract with our company. Please call if you have any questions. Danny." (Ex. E).

16. EPC obtained a policy for the 2008-2009 policy period, (2008-2009 Policy, attached hereto as "Exhibit F"). and subsequently renewed, obtaining policies for the 2009-2010 policy period (2009-2010 Policy, attached hereto as "Exhibit G"), the 2010-2011 policy period (2010-2011 Policy, attached hereto as "Exhibit H"), and the 2011-2012 policy period (2011-2012 Policy, attached hereto as "Exhibit I").

17. Each of the policies contain the following insuring agreement:

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" [...]

(3) Prior to the policy period, no insured ... knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured ... knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured … includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have

been known to have occurred at the earliest time when any insured …
: […]

>   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

(Ex. F, G, H, and I § I. A. 1).

18.   The alleged conduct made the basis of the Slaghts' Complaint and Hunter's Complaint do not qualify as an "occurrence" as defined by the policy or case law precedent.

19.   The damages claimed by the Slaghts and Hunter did not manifest during SPARTA's policy period(s). Additionally, the Complaints allege damages which were known to the insured prior to beginning of the policy period(s), so do not fall within the purview of the policy.

20.   All of the policies contain certain exclusions to coverage:

This insurance does not apply to:

a.   Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.   Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  (1) That the insured would have in the absence of the contract or agreement; or

  (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.[...]

j.  Damage to Property [replaced by the Pesticide or Herbicide Applicators Coverage Endorsement]

 "Property damage" to: […]

 (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
 (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

 … Paragraphs (4) and (5) of this exclusion do not apply if "your work" meets all standards of all statues, ordinances, regulations or license requirements of all federal, state or local governments which apply to those operations. [...]

k.  Damage To Your Product

 "Property damage" to "your product" arising out of it or any part of it.

l.  Damage To Your Work

 This insurance does not apply to: […]

 "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

11

>> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. […]
>
> m.   Damage To Impaired Property Or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Ex. F, G, H, and I § I. A. 2; Ex. F. at p. 33; Ex. G at p. 32; Ex. H at p. 31; Ex. I at p. 40).

21.   The Slaghts and Hunter allege conduct and damages which fall squarely within the exclusionary language quoted above, as well as other exclusionary language contained in the policies. SPARTA has no duty to defend those claims.

22.   To obtain coverage under the policies, the insured must comply with certain conditions:

> 2.   Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.   You must see to it that we are notified as soon as

practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

>  (1) How, when and where the "occurrence" or offense took place;
>
>  (2) The names and addresses of any injured persons and witnesses; and
>
>  (3) The nature and location of any injury or damage arising out of the "occurrence" or offense. […]

c.  You and any other involved insured must:

>  (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
>  (2) Authorize us to obtain records and other information;
>
>  (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and […]

6.  Representations

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

(Ex. F, G, H, and I §IV).

13

23. EPC may not have fulfilled its duty to notify and its duty to cooperate as required by the policies. Additionally, EPC made material representations to SPARTA which were untrue.

24. The policy contains two endorsements which specifically pertain to pest control businesses. The Property Damage Extension for Continual Monitoring/Treatment provides the following coverage:

> 1. Insuring Agreement
>
> We will pay those sums which the insured becomes legally obligated to pay as damages because of "property damage", caused by an insured's failure to identify the present or past existence of "wood destroying organisms" in the area(s) the Insured inspected on the date the Insured inspected the "real property" or "property damage" existing prior to the inspection, described in the "inspection contract", and to which this insurance applies. The amount we will pay as damages is limited as described in paragraph B. of this endorsement. The "property damage" must have been caused by a "wood destroying organism" specified in the "inspection contract", and the "property damage" must have been visible, accessible and in existence at the time of inspection. This replaces and is not in addition to any other property damage coverage that might apply under this policy.

(Ex. G at p. 35-37; Ex. H at p. 33-35; Ex. I at p.33-35; Ex. J at p. 42-44).

25. The Property Damage Extension for Treatment/Renewal endorsement states:

> 1. Insuring Agreement
>
> We will pay, those sums which the insured becomes legally obligated to pay as damages because of "property damage" to "real property", caused

by the infestation of: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the "treatment contract", for such services, which occurs after the "actual treatment" and to which this insurance applies. This replaces and is not in addition to any other "property damage" coverage that might apply under this policy.

(Ex. G at p. 38-39; Ex. H at p.36-37; Ex. I at p. 36-37; Ex. J at p. 45-46). The Slaghts and Hunter allege conduct by EPC which is not in accordance with either insuring agreement for a number of reasons, including but not limited to the absence of an "inspection contract," "treatment contract," or "actual treatment," as defined by the policies.

26. Coverage under the Property Damage Extension for Continual Monitoring/ Treatment and the Property Damage Extension for Treatment/ Renewal coverages are subject to the following exclusions:

> a. Any cost or expense to treat, re-treat, inspection or re-inspection for "wood destroying organisms".
>
> b. Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.

(Ex. G at p. 35-39; Ex. H at p. 33-37; Ex. I at p.33-37; Ex. J at p. 42-46). The Slaghts and Hunter allege damages which fall within both of these exclusions.

27. The Property Damage Extension for Continual Monitoring/ Treatment also excludes:

15

  c. Any "property damage" occurring before the "continual monitoring/treatment" date as shown in your "treatment contract" or after the end of the policy period.

  d. Any spot or partial treatments not made in accordance with the "approved system providers" applicable guidelines and procedures.

(Ex. G at p. 35-37; Ex. H at p. 33-35; Ex. I at p.33-35; Ex. J at p. 42-44).

  28. It does not appear that the Slaghts or Hunter had "continual monitoring/treatment" in connection with a "treatment contract," as defined by the policies, negating this coverage. It also appears that the claims involve spot treatments which were not made in accordance with the applicable guidelines and procedures.

  29. The Property Damage Extension for Treatment/Renewal excludes the following:

  c. Any "property damage" occurring before the "continual monitoring/treatment" date as shown in your "treatment contract" or after the end of the policy period.

  e. Any spot or partial treatments.

  f. Any "property damage" to "real property" that has not had a "renewal inspection" within twenty four (24) months of your last "renewal inspection" or "actual treatment".

(Ex. G at p. 35-37; Ex. H at p. 33-35; Ex. I at p.33-35; Ex. J at p. 42-44).

  30. The Slaghts and Hunter do not allege a "continual/monitoring treatment" agreement as defined in the policy, nor does it appear that a "treatment

contract," a "renewal inspection" or an "actual treatment" as defined by the policy are alleged. Furthermore, the Slaghts and Hunter allege spot and/or partial treatments.

31. The coverage provided by both pest control-specific endorsements are subject to conditions in addition to those contained in Coverage A. Those conditions include requiring detailed graphs (also required by statute), reports, and contracts. There are a number of requirements for contracts and graphs, such as signatures and fees. These records are to be kept by the insured and be made available for inspection. (Ex. G at p. 35-39; Ex. H at p. 33-37; Ex. I at p.33-37; Ex. J at p. 42-46).

32. EPC did not complete graphs, contracts or inspections in accordance with the policy requirements. EPC did obtain signatures, and did not charge the Slaghts in connection with at least one so-called renewal contract. EPC did not maintain records in accordance with the policy's requirements, statutory requirements, or ADAI requirements. EPC has not made its records available for inspection.

## CLAIMS FOR RELIEF

33. SPARTA maintains that there is no coverage under its for the claims set out in the underlying suits; that the facts and damages alleged in the underlying Complaints are not within the terms of the policies; and/or that the underlying allegations are within the terms of the exclusions of the policies; and/or that the

conditions of the policies have not been met; and/or that SPARTA is entitled to rescission of the insurance policies as a result of the insured's material misrepresentations during the application process(es). Consequently, EPC is not entitled to policy benefits by way of defense or indemnity with respect to the underlying suits.

34. A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to said policies.

35. SPARTA requests the following relief:

a. That this Court will take jurisdiction of this Declaratory Judgment Action;

b. That upon final hearing of this cause, this Court will declare the rights, status, and legal relations of SPARTA and the Defendants named in this Complaint for Declaratory Judgment under the subject policies of insurance issued by SPARTA;

c. That upon a final hearing of this case, this Court will order, adjudge, declare, or decree that SPARTA is not required to defend any defendant in the underlying suit and that no coverage is afforded to any defendant under the subject policies for the claims brought by the plaintiffs in the underlying suit.

    d.    Grant any other relief that the Court deems just and equitable under the circumstances.

Respectfully submitted,

/s/   Allan S. Jones
Allan S. Jones (ASB-4458-E-37-A)
Kristi A. Driskill (ASB-4099-I-57-P)
Attorneys for SPARTA Insurance Company

OF COUNSEL:
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama  35216
Telephone:  (205) 822-2006
Facsimile:   (205) 822-2057

## PLEASE SERVE THE FOLLOWING DEFENDANTS
## BY CERTIFIED MAIL:

Danny Joe Poore d/b/a Economy Termite and Pest Control
604 Ledford Street
Weaver, AL 36277

Carlos and Joan Slaght
761 White's Gap Road
Jacksonville, Alabama 36265

Andrew Hunter
499 Bailey Road, Weaver
Alabama 36277